**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**KEVIN QUATTLEBAUM,**<br>        **Defendant.** | **Civil Action No. 10-772 (JDB)**<br>**Criminal Action No. 07-235 (JDB)** |

**MEMORANDUM OPINION**

This case is before the Court on petitioner Kevin Quattlebaum's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, the Court will deny the motion.

In 2007, Quattlebaum was arrested when, following a traffic stop, police officers found crack cocaine in his truck. He was charged with unlawful possession with intent to distribute 50 grams or more of cocaine base (also known as crack) in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii) (2006). Quattlebaum moved to suppress the drugs, contending that the police lacked probable cause either to stop the truck or to search it. The Court found probable cause for both the stop and the search, denying the motion to suppress, and Quattlebaum was convicted after a jury trial. He appealed, arguing that this Court erred by denying his motion to suppress. Rejecting his arguments, the D.C. Circuit affirmed Quattlebaum's conviction. See United States v. Quattlebaum, 331 F. App'x 755 (D.C. Cir. 2009) (per curiam).

On June 30, 2008, the Court sentenced Quattlebaum to 126 months of imprisonment, a sentence at "the lower end" of the then-applicable United States Sentencing Guidelines range. See Sentencing Tr. [Docket Entry 80] at 30:21-23 (June 30, 2008).[1] The Sentencing Guidelines

---

[1] The Court also imposed a period of supervised release and a special assessment.

were subsequently amended, significantly reducing the ranges for crack cocaine offenses to reduce the disparity between punishment for crack and powder cocaine crimes. In light of the amendment to the guidelines—which the Sentencing Commission made retroactive—the Court has now reduced Quattlebaum's sentence to 120 months, the mandatory minimum under the statute in effect at the time of Quattlebaum's sentencing, 21 U.S.C. § 841(b)(1)(A)(iii) (2006). See Memorandum Opinion [Docket Entry 97] (Mar. 22, 2013).

In this pro se motion to vacate, set aside or correct his sentence, Quattlebaum raises a number of arguments [Docket Entry 78]. The Court has made its best effort to understand Quattlebaum's arguments and construe them favorably. Nonetheless, the Court finds that all lack merit or are procedurally barred.

First, Quattlebaum argues that the Court "acted in clear absence of all jurisdiction" because "U.S. District Court Judges do not have any jurisdiction over the dispute . . . and no jurisdiction over the act." Pet'r's Mot. [Docket Entry 78] at 5 (May 11, 2010). But Quattlebaum was charged with a federal offense—violating 21 U.S.C. § 841(a)(1) by possessing, with intent to distribute, crack cocaine. And this Court has jurisdiction over "all offenses against the laws of the United States." 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."). Accordingly, the Court has jurisdiction over Quattlebaum's offense.[2]

---

[2] Quattlebaum also seeks to challenge his case as being improperly "certified from Superior Court of the District of Columbia to U.S. District Court for the District of Columbia" even though he did "not waive a right to trial in Superior Court of D.C." Pet'r's' Mot. at 5. But a defendant does not have a right to be tried in D.C. Superior Court—on the contrary, the government may choose to indict and try him in federal court for any federal offense, and federal courts have "exclusive" jurisdiction over such offenses. See 18 U.S.C. § 3231. In any case, the improper transfer argument is procedurally barred because Quattlebaum failed to raise it before this Court or on direct appeal.

Next, Quattlebaum alleges "fraud and no probable cause" for the stop of his vehicle and subsequent arrest. Pet'r's Mot. at 6. This claim, however, was already raised and rejected by the D.C. Circuit on direct appeal. See Quattlebaum, 331 F. App'x at 756.

Quattlebaum also argues that his counsel was constitutionally ineffective. The Sixth Amendment guarantees "the right to the effective assistance of counsel," Strickland v. Washington, 466 U.S. 668, 686 (1984) (internal quotation marks omitted), and a habeas petitioner may raise an ineffective assistance of counsel claim for the first time in a section 2255 proceeding "whether or not [he] could have raised the claim on direct appeal." Massaro v. United States, 538 U.S. 500, 504 (2003). To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must show both that his lawyer performed deficiently, see Strickland, 466 U.S. at 687 (requiring showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"), and that he was prejudiced by the lawyer's mistakes, see id. at 694 (requiring "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." Id. at 700. In assessing counsel's performance, the Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." United States v. Toms, 396 F.3d 427, 432 (D.C. Cir. 2005) (internal quotation marks omitted).

In support of his ineffective assistance claim, Quattlebaum contends that his attorney failed to discuss the issue of jurisdiction with him or to object to the Court's lack of jurisdiction to handle his case. Such an argument would have been meritless—and, indeed, frivolous—for the reasons discussed above. Declining to file a frivolous motion is counsel's prerogative, and

shows sound judgment rather than deficient performance. See <u>United States v. Best</u>, 426 F.3d 937, 945 (7th Cir. 2005) ("a strategic decision [is] generally not subject to review" (internal quotation marks omitted)). Nor, of course, was the failure to make a jurisdictional argument prejudicial because the Court would have rejected any such argument.

Quattlebaum also argues that his lawyer was deficient in "violat[ing] [his] right to remain silent." Pet'r's Mot. at 6. He offers no specific instances of this purported failure. Insofar as this allegation refers to petitioner's decision to testify at trial, the Court conducted a thorough colloquy with Quattlebaum to ascertain that he was knowingly and voluntarily waiving his Fifth Amendment rights. See Trial Tr. [Docket Entry 109] at 644:25-645:14 (Nov. 29, 2007) ("Court: I've been informed by Mr. Love [that] it's your intention to testify; is that correct? Defendant: Yes. Court: Now, do you understand that that is your decision to make? Defendant: Yes. Court: And have you discussed that thoroughly with your counsel-- Defendant: Yes. Court: --and taken into consideration his advice? Defendant: Yes. Court: And is it your decision that you wish to take the stand and testify in your own defense today? Defendant: Yes. Court: All right. Thank you."). Because Quattlebaum knowingly and voluntarily waived his Fifth Amendment rights when he chose to testify, those rights were not violated. Moreover, insofar as Quattlebaum argues that his attorney should have advised him not to testify, an attorney's decision to have a client testify is a "strategic choice" that, even if ultimately detrimental to the case with the benefit of hindsight, cannot establish constitutionally deficient performance. See <u>Toms</u>, 396 F.3d at 433 (internal quotation marks omitted); <u>see also</u> <u>Best</u>, 426 F.3d 937, 945 ("[A] lawyer's decision to call or not to call a witness is a strategic decision generally not subject to review." (internal quotation marks)). And Quattlebaum has cited no reason that his decision to testify harmed his case. Accordingly, even if encouraging him to testify was somehow deficient

performance by counsel, there is no reasonable probability that Quattlebaum would have been acquitted had he stayed off the stand. Absent specific allegations as to other instances in which Quattlebaum's Fifth Amendment rights were disregarded, the Court hence has no basis to conclude that counsel was deficient in this respect (or that any violation that might have occurred prejudiced petitioner).

Quattlebaum next argues that his attorney failed to protect him from the "lie[s]" of police officers. See Pet'r's Mot. at 6, 7. To be sure, any convicted defendant wishes his attorney made a bigger dent in the government's case. But Quattlebaum has not identified any specific failing— he has not, for instance, pointed to a piece of impeachment evidence that counsel might have uncovered with more diligent investigation or indicated a specific approach counsel could have taken to cross-examine police officers more effectively. See Toms, 396 F.3d at 433 (rejecting ineffective assistance claim where petitioner offered insufficient indication of "what his counsel might have done"). The Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," id. (internal quotation marks omitted), and here nothing about counsel's conduct with respect to the police officers' testimony remotely rebuts this presumption. On the contrary, counsel actively challenged police officers' conduct of petitioner's traffic stop at the motion to suppress stage and vigorously cross-examined police officer witnesses at trial. Counsel questioned officers' credibility and unearthed inconsistencies and weaknesses in their testimony. See, e.g., Mot. Hr'g Tr. [Docket Entry 103] at 15:11-12, 28:21-23 (Nov. 9, 2007); Mot. Hr'g Tr. [Docket Entry 104] at 15:17-16:13, 18:21-19:8 (Nov. 15, 2007); Trial Tr. [Docket Entry 109] at 661:2-14 (Nov. 29, 2007) (eliciting testimony from Sergeant Neill that he lied to Quattlebaum during the investigation and that most people would describe a person who lies as a "liar"). And, again, counsel's particular approach to the

government's evidence was tactical, constituting a quintessential "strategic choice" that "is virtually unchallengeable." <u>Toms</u>, 396 F.3d at 433 (internal quotation marks omitted). Ultimately, Quattlebaum's argument amounts simply to the claim that he lost at trial when he believes he should have won. This does not establish that counsel's conduct fell below the requisite level.[3]

Lastly, Quattlebaum points to a number of perceived deficiencies in his attorney's handling of the sentencing hearing. The Court, however, recently reduced Quattlebaum's sentence to 120 months, and he is now sentenced to the mandatory minimum for his conviction. <u>See</u> 21 U.S.C. § 841(b)(1)(A)(iii) (2006) (any person convicted of possessing, with intent to distribute, 50 grams of more of crack cocaine "shall be sentenced to a term of imprisonment which may not be less than 10 years"); <u>see also</u> Memorandum Opinion [Docket Entry 97] (Mar. 22, 2013) (explaining why the 120-month sentence is the minimum the Court can impose). Given this statutory mandatory minimum, not even Clarence Darrow could have obtained a sentence below 120 months. Quattlebaum hence cannot show prejudice from any deficient performance during sentencing.

All of Quattlebaum's remaining arguments are procedurally barred because he did not raise them at trial or on direct appeal.[4] "[A] collateral challenge may not do service for an appeal." <u>United States v. Frady</u>, 456 U.S. 152, 165 (1982). Rather, to raise an issue for the first time on collateral review, a section 2255 petitioner "must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he

---

[3] Quattlebaum also alleges that counsel was "essentially dysfunctional in sharing evidence before Trial." Pet'r's Mot. at 6. This conclusory statement does not indicate what evidence was improperly shared (or with whom), nor does it give any hint how more effective evidence sharing could create a reasonable probability that Quattlebaum would have been acquitted at trial.

[4] Although the arguments are somewhat difficult to deduce, Quattlebaum appears to be alleging a malicious prosecution that misled the public as to the presence of drugs in his truck and arguing that the Court was "not impartial." Pet'r's Mot. at 8, 10

complains. Id. at 168. "[T]he cause standard requires the petitioner to show that some objective factor external to the defense impeded counsel's efforts to raise the claim." McCleskey v. Zant, 499 U.S. 467, 493 (1991) (internal quotation marks omitted). Attorney error amounting to ineffective assistance of counsel constitutes cause, but Quattlebaum has not established ineffective assistance by his trial attorney. Nor has he even alleged that his attorney on direct appeal was ineffective. Quattlebaum nonetheless argues that his procedural default should be excused because "government officials interfered with filings of District of Columbia Defense funds," and because of "withholding . . . defense funds and pocketing taxpayers money in tax evasion." Pet'r's Mot. at 7, 8. This argument does not work: Quattlebaum received a lawyer at trial and on appeal, and any purportedly improper dispersal of funds is unrelated to his ability to preserve objections.

An otherwise procedurally barred "claim may still be reviewed in [a] collateral proceeding if [petitioner] can establish that the [error] has probably resulted in the conviction of one who is actually innocent." Bousley v. United States, 523 U.S. 614, 623 (1998) (internal quotation marks omitted). But Quattlebaum has not "brought before the . . . Court" any "affirmative evidence indicating that he had been convicted wrongly of a crime of which he was innocent." Frady, 456 U.S. at 171; see also Bousley, 523 U.S. at 623 (petitioner arguing actual innocence must show that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him" (internal quotation marks omitted)). The jury's verdict—which was amply supported by evidence when delivered, see Memorandum Opinion [Docket Entry 57] at 11 (Jan. 30, 2008) (denying defendant's motion for judgment of acquittal or a new trial and explaining why "the evidence falls far short of preponderating against the verdict (or even negating the government's case in chief)")—thus stands unimpeached.

Upon a careful review of the petitioner's motion and the entire record of this criminal proceeding, as well as based on the Court's recollection of the relevant events, the Court concludes that a hearing is unnecessary. See United States v. Morrison, 98 F.3d 619, 625 (D.C. Cir. 1996) (the decision whether to hold a hearing is committed to the district court's discretion when, as here, the judge who is considering the section 2255 motion "also presided over the trial in which the petitioner claims to have been prejudiced"); see also Toms, 396 F.3d at 437 (same). Quattlebaum does not point to any information outside the record that would assist the Court in evaluating his claims. "[T]he motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," 28 U.S.C. § 2255(b), and the Court will hence deny the motion without holding an evidentiary hearing.

For all these reasons, the Court will deny Quattlebaum's section 2255 motion. A separate order has been issued.

_____/s/_____

JOHN D. BATES

United States District Judge

Dated: March 29, 2013